JOAQUÍN GARCÍA RODRÍGUEZ, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. M. ALMODÓVAR ACEVEDO, JUDGE, Respondent.

No. 2401.   Submitted March 21, 1960.—Decided May 17, 1961.

*Rodríguez Ema & Rodríguez Ramón* for petitioner.  *Juan T. Peñagaricano, Víctor M. Marchán, Abrahán Freyre,* and *Nieves Agostini de Torres* for the Economic Stabilization Administration of Puerto Rico.  *Jorge Benítez Gautier* for the tenants in the appeal before the Superior Court.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The petitioner leased to several tenants seven commercial premises in a building owned by him at 2054 Borinquen Avenue, Santurce, within the municipality of San Juan, Puerto Rico, for a monthly rental, each premise, of $250, except one, which rented $225.  The premises were registered for the first time in the Economic Stabilization Administration on February 2, 1955.

After making the proper investigation the aforesaid administrative agency notified the landlord on November 2, 1955, that it intended to fix the maximum rent of those premises on the basis of comparable rents of similar premises, pursuant to the prevailing rent on October 1, 1942, at $109.70 for each premise, with the exception of the place occupied by Drugs & Cosmetics, Inc., which would rent $140.55.

The landlord objected the proposed reduction in the rent, among other reasons, because the rent should be fixed on the basis of the construction cost, alleging that they were new constructions.

After a hearing, the Administration issued several orders on August 3, 1956, in which it fixed the following rentals:

| | |
|---|---|
| Drugs & Cosmetics, Inc. | $140. 55 |
| Rafael Ramírez Chévere | 142. 70 |
| Germánico Vando | 142. 70 |
| Joyería Yamin, Inc. | 142. 70 |
| Luis Rodríguez Cruz | 142. 70 |
| J. Rodríguez Rolán | 142. 70 |
| George Rudes | 142. 00 |

The landlord obtained a review of the aforesaid orders in the Superior Court, San Juan Part, which rendered a judgment affirming said orders. We issued a writ of certiorari to review the judgment of the Superior Court.

■■ At the end of 1954 and finishing at the beginning of 1955 certain substantial repairs were made in the building. The attorney in fact of the landlord testified that said repairs consisted in the demolition of the front walls in order to install show windows, substantial demolition of a front wall, substitution of windows and side walls, and the plastering thereof, leaving the walls essentially as they existed, the construction of an overhang in the rear wall for the construction of sanitary services, installation of asphalt tile floors, installation of a new ceiling, installation of new partitions in the premises, substitution of the electric installation for

a new one, installation of new asphalt paper built-up roof, and installation of a rear fence. He further testified that the building had been constructed in 1918; that the floor of the building was covered with asphalt tile but that the floor is the same one existing before; that only the columns of the front walls remained; that the only repair made on the side walls was the removal of the windows, substituting them by new ones and that they essentially remained as before. He also testified that the premises occupied by Drugs & Cosmetics, Inc., suffered no repair whatsoever and remained exactly as it was before.

Prior to these repairs the building was divided by a concrete wall into two premises. The premises, on the left-hand side, facing the building, occupied by Drugs & Cosmetics, Inc., has an approximate area of 2885.75 square feet, equivalent to 24.9% of the entire building.

According to the expert engineer called by the landlord, the left premises which were not improved have an estimated value of $5 per square foot and the portion divided into six premises has an estimated value of $66,176 computed at $7 per square foot.

The premises on the right-hand side, facing the building, which was the only one improved, was subdivided into six small premises of about 1,461 square feet each, using durotex divisions at an approximate cost of $252 for each division. The front wall was demolished and only the columns remained. Show windows were installed between each column with concrete walls and roof. The rear wall was partly demolished at the upper part and behind it six small bathrooms were constructed with 4" concrete blocks. The three side walls, the floor, and the roof are the same ones, although the floor was covered with asphalt tile; a new board ceiling was hung from the roof, which is also supported by a number of steel joists, the windows in the walls were substituted, and other minor repairs were also made.

The engineers of the Economic Stabilization Administration that made an inspection of the building testified that: ". . . any engineer that goes there will see that those improvements do not reach the necessary percentage of construction for the building to constitute a new construction. In other words: the walls, in the left side, right side, and in the rear, are old, the rear platform is old, the roof is the same, only it was repaired." The engineers assessed these improvements in the sum of $20,699.81.

In the petition for the workmen insurance policy No. 82637, series 84020, filed on October 7, 1954, with the State Insurance Fund, the landlord himself explains that the policy was "to cover structural repair work on a reinforced concrete building" at the address occupied by the building, with a payroll of $5,590. This policy was enlarged by another with a payroll estimated at $450 "to cover construction work and the installation of show windows" in the same building.

Section 6 of the Reasonable Rents Act (17 L.P.R.A. § 186), provides that if the dwelling or building had not been rented on October 1, 1942, the Administrator shall fix the reasonable rent on the basis of the rents prevailing in Puerto Rico for similar dwellings or buildings during the year ended October 1, 1942, If the dwelling or building was constructed after October 1, 1942, the Administrator shall fix the reasonable rent on the basis of the cost of construction of said dwelling or building; *it being understood* that in no case shall the reasonable rent, as computed for one year, exceed twelve (12) per cent of the cost of the works." Said section also grants power to the Administrator to fix the reasonable rent prescribing increase in the prevailing rent in such cases in which "in his judgment, it is so justified by improvements of capital importance," but no increase so authorized shall exceed by more than fifteen (15) per cent the rent fixed.

Section 24 exempted from the provisions of the Act, as to the amount of the rent to be charged during emergency, every rental property for business and commercial and industrial purposes, or devoted to a dwelling, the construction of which may be actually begun in the course of the year 1946, and completed within a period of one year, or of the extension, for an additional period not to exceed one year, granted by the Administrator for justified reason.

In *Aponte* v. *District Court*, 68 P.R.R. 777—cited by petitioner in support of his contention—we held that for the purposes of § 24 of the Reasonable Rents Act, two commercial premises in a building constituted new constructions, exempt from contract, whose interior walls had been demolished; twelve columns to support some steel joists had been constructed, the front had been changed, and a third story had been added. At the time this case was decided, May 25, 1948, the Legislature had passed Act No. 201 of May 14, 1948, inserting, among others, a new paragraph to § 6, which provides:

"No capital improvement, nor the reconstruction of the building, nor the conversion of a dwelling into commercial premises, nor the conversion of commercial premises into a dwelling, shall be considered a new building for the purposes of § 24 of this Act."

In n.3 of the opinion rendered in the *Aponte* case, *supra,* the Court stated that it had taken judicial notice of the enactment of Act No. 201, but added: "Accepting without deciding that under this amendment the Administrator might be authorized to fix the rent of the establishments involved herein, the present case would not be affected. The orders rendered by the Administrator on August 14, 1947 are void inasmuch as they are not authorized by any law in force at that time."

Act No. 201 explained and definitively established that commercial premises such as those involved in the *Aponte* case did not constitute, for the purposes of the Act, new

constructions. See *Ledesma, Administrator* v. *District Court,* 71 P.R.R. 81.

*Rodríguez* v. *District Court,* 69 P.R.R. 505, also cited by the petitioner, does not decide the point in question in his favor. There we decided that the demolition to construct a new building even when traces of the old building remained is no ground for eviction. Since the Act required the intent on the part of the landlord to demolish wholly or partially the leased building in order to erect a new one, we said that this latter requirement does not mean that no trace of the old building may remain because, if we so held, we would be frustrating the intent of the Legislature that partial demolition was sufficient.

In view of the foregoing, we cannot agree with the petitioner that the Economic Stabilization Administration committed error in fixing the rents of the six commercial premises on the basis of comparable rents. If any error was actually committed by the administrative agency, as it readily admits to this Court, was its generosity with the landlord. Even though its engineer appraised the improvement in the amount of $20,699.61, said amount was raised to $40,481.71, and it was on this amount that it computed the rent of 12% annually, without the limitation of 15% of the comparable corresponding rent.

The Superior Court did not commit error in ratifying the action of the administrative agency in fixing the reasonable rents in the manner it did.

Nor do we agree with the petitioner in that the orders issued by the Administrator in this case are void for lack of findings of fact and conclusions of law. As he points out in his brief on page 9, the Administrator, to make his order valid, should have made basic findings of fact with relation to the cost of construction and value of the lot on the basis of the value of the lots sold within that same area.

From the record of all the proceedings had before the administrative agency it appears that the controversy turned on the fundamental question of whether or not the six commercial premises were a new construction for the purpose of determining the basis for fixing the rent, and whether the evidence of the parties tended to establish the value of the repairs done in the building. It appears from the record that the Administrator accepted, as improvement value, the sum of $40,841.71. In the orders challenged it is expressly stated that the maximum rent is fixed on the basis of comparable rents prevailing for similar premises. The trial court, therefore, had before it all the necessary elements to properly review the orders challenged and to decide whether the administrative agency had made its determinations on the evidence and the law. The administrative agency made out a complete record of the proceedings had before it, including the documentary evidence and the transcript of the oral evidence admitted and the basis on which the agency acted is clearly revealed by said record and it is adequately supported by the evidence. See *Ledesma, Administrator* v. *District Court*, 73 P.R.R. 379.

We do not see how in the absence of a statute so requiring it, the orders issued by the Administrator in this case can be set aside on the basis that he failed to make the conclusions required by Rule 43.1 of Civil Procedure.

The judgment rendered by the Superior Court will be affirmed.